IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| WARREN T. ROACH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:05CV569 |
| | ) | |
| ROCKINGHAM COUNTY BOARD OF EDUCATION, | ) | |
| | ) | |
| Defendant. | ) | |

<u>MEMORANDUM OPINION</u>

This matter is before the Court on a Motion for Summary Judgment [Document #50] by Defendant Rockingham County Board of Education. Plaintiff Warren T. Roach ("Plaintiff"), who is *pro se*, brings claims against the Board alleging race discrimination related to his termination from his position as a bus driver and custodian with Rockingham County Schools. The Court notes that all of the other previously-named Defendants (Rockingham County Schools, Rockingham County Middle School, Rockingham County High School, Rockingham County Schools Transportation Department, and Brooks Pierce McLendon Humphrey & Leonard L.L.P.) were dismissed pursuant to this Court's Order dated July 21, 2006 [Document #31]. The Court also notes that Plaintiff in his Amended Complaint attempted to add as a named defendant the North Carolina State Board of Education, but Plaintiff failed to obtain service as required by Federal Rule of Civil Procedure 4. On January 22, 2007, Plaintiff was given Notice that his claims against the North Carolina State Board of Education would be dismissed for

failure to obtain service, but Plaintiff did not respond to that Notice. Therefore, the claims against the North Carolina State Board of Education will be dismissed. As such, the only remaining Defendant is the Rockingham County Board of Education ("the Board"). In the present Motion for Summary Judgment, the Board seeks to dismiss all claims asserted by Plaintiff in this case.

I.  FACTUAL BACKGROUND

Plaintiff is an African American male who was employed as a bus driver and custodian at Rockingham County Middle School ("the School") from June of 2000 until May of 2004. On June 9, 2003, the Middle School Assistant Principal, Mr. Baez, and the Middle School Principal, Mr. Hall, met with Plaintiff regarding their concerns that he had been giving gifts to students. On June 23, 2003, a parent subsequently complained to the School that her daughter and a friend had received CDs from Plaintiff. Assistant Principal Baez and Principal Hall met with Plaintiff again about giving students gifts, and gave Plaintiff a written directive not to give further gifts to students or it would be considered insubordination and grounds for termination. Plaintiff contends that he did not give a CD to the student whose parent complained, and instead only gave the CD to two other students. However, regardless of the underlying circumstances, Plaintiff has admitted that he received the June 23, 2003 letter warning him not to give gifts to students in the future, and Plaintiff did not receive any further discipline with respect to this incident.

In early May of 2004, Plaintiff gave a letter and what he describes as "self-help" material

2

to another middle school student.  The material was taken up by a teacher when the student had it on her desk.  Plaintiff, in an attempt to retrieve the material, went to the workplace of the student's mother and asked the mother to try to get the papers back.  The parent complained to the School regarding Plaintiff contacting her at her workplace, and also expressed her concerns regarding what material Plaintiff might be giving to her daughter.  In an e-mail to the School on May 13, 2004, the parent complained that Plaintiff had used profanity when he visited her at her workplace and had commented that the clothes her daughter was wearing "gave her teachers the impression she was 'trailer trash.'"  The parent complained that Plaintiff persisted in calling her at work to try to convince her to help get the papers back.  Finally, the parent insisted that she wanted to read whatever had been given to her daughter.  (See Pl.'s Brief [Doc. #56] Ex. 10 at 6-7 (copy of e-mail)).

Further investigation revealed that the letter Plaintiff had written to the middle school student contained extensive profanity and inappropriate discussions.  (See Pl.'s Brief [Doc. #56] Ex. 10 at 3-5 (copy of letter from Plaintiff to student)).  For example, Plaintiff wrote to the student that "my life use to be one big f--- up daily"[1] and "I hated life I hated myself and I use to look in the mirror and say to myself look at you ugly m-----f----- that is why no one wants you or want to be around you."  Plaintiff also wrote to the student "I had only one girlfriend in school and that was when I became a junior and guess what she got pregnat man lifes been hard."

---

[1] The letter written by Plaintiff to the middle school student was laced with profanity and racial epithets, which the Court has redacted here for purposes of this Memorandum Opinion. Plaintiff's typographical errors are retained.

3

Plaintiff told the student "I finnally stated confideing to this white female teacher she was very young her first year of teaching and a lot of people thought we had something going on but we did not" and "so you can see when I gave you what I did I had begun to do the same for you that she did for me because she could have just walked away or listen to others and said f--- that little n----- boy he's nothing to me but she did not she embraced me." Plaintiff also wrote that "if you were to listen to anyone who has killed before wheather they are a single killer or a serial bottom line they just snap and the s--- has happen without them noticing before its too late." Plaintiff told the student he was enclosing information and examples of topics that he discussed with other students, so that she would feel comfortable talking with him and "letting you know you can trust me and you know I have already trusted you." Plaintiff admits that he gave this letter to the middle school student, and has attached a copy of the letter, as well as her mother's e-mail to the School, as Exhibits in his Brief in Response to Defendant's Motion for Summary Judgment.

School officials conducted additional investigation, and determined that Plaintiff had engaged in inappropriate e-mailing, instant messaging, and letter-writing with other students as well. Plaintiff does not deny these contacts and has attached to his Response Brief multiple notes, letters, instant message exchanges and e-mails between him and various middle school girls. School officials also determined that Plaintiff had continued to give gifts to students, despite the previous direction that he not do so. In addition to various gifts to individual students, Plaintiff gave all of the students who rode his bus copies of a CD that he had "burned" in violation of the

4

copyright laws. The CD was entitled "Now That's What I Call Music! 14" and included songs by various artists. Plaintiff admits that he gave out "burned" copies of the CD in December 2003 and contends that the CD was appropriate because it did not have a "Parental Advisory Label." However, the CD (which Plaintiff distributed to high school and middle school students without permission from their parents or the School) included songs with overt sexual content, as well as references to drinking and getting high.

On May 19, 2004, the Superintendent of the Rockingham County Board of Education, Mr. Walter Bromenschenkel, sent a letter to Plaintiff stating that he intended to recommend termination of Plaintiff's employment effective immediately. The letter advised Plaintiff that the basis of the recommendation was Plaintiff's distribution of CDs to students after being directed not to provide gifts to students, as well as the fact that the CDs were illegally recorded and contained inappropriate language and content. The letter also noted that the recommendation was based on Plaintiff's letter to the middle school student containing profanity and inappropriate discussions, and Plaintiff's attempts to approach the student's mother at her workplace to convince her to help him circumvent the School's investigation. The letter invited Plaintiff to respond to the allegations at a meeting on May 28, 2004, which Plaintiff declined to do. Plaintiff was subsequently terminated by the Superintendent with the approval of the Board, and Plaintiff did not appeal that decision to the Board.

Plaintiff subsequently filed the present lawsuit contending that his termination was motivated by race discrimination in violation of Title VII of the Civil Rights Act of 1964 as

5

amended by the Civil Rights Act of 1991. Plaintiff admits that he received the written warning not to give gifts to students and admits that he nevertheless distributed "burned" copies of the "Now 14" CD to the high school and middle school students on his bus. Plaintiff also admits that he sent letters and e-mails to various students, and as noted above, Plaintiff has in fact attached copies of that correspondence to his Response Brief. Plaintiff nevertheless contends that he should not have been terminated and that the termination was based on race discrimination.

In his Amended Complaint and his Response Brief, Plaintiff attempts to raise several bases in support of his claim of race discrimination. First, Plaintiff contends that one of the teachers at the School, Ms. Katherine Kropa, complained to administrators about the Plaintiff, and that her complaint was motivated by racial discrimination after she learned that Plaintiff's wife is Caucasian. Plaintiff contends that he introduced Ms. Kropa to his wife in December 2001 and after that he "noticed a significant change in her attitude" in that Ms. Kropa was not as friendly or sociable toward him. According to the evidence submitted by Plaintiff, Ms. Kropa did complain about Plaintiff in November 2002 (nearly a year later), but that complaint was related to Plaintiff interrupting her by cleaning her classroom during her planning period and allowing students to assist him with cleaning during school time. (See Pl.'s Brief [Doc. #56] Ex. 9 (copy of complaint by Ms. Kropa to Principal Hall)). After Plaintiff's supervisor discussed the matter with Plaintiff, the complaint was not placed in Plaintiff's file and Plaintiff was not disciplined in any way.

Second, Plaintiff apparently contends that his termination was motivated by race

6

discrimination because the complaints and investigation and ultimate termination pertained only to Plaintiff's interactions with white female students, while his supervisors did not raise any complaints or issues regarding Plaintiff's interaction with black students. However, Plaintiff acknowledges that the parent who complained (and whose complaint sparked the investigation) was the parent of a white female student to whom he had written the letter described above.

Third, Plaintiff contends that Middle School Principal Hall once referred to Plaintiff as "a broke Michael Jackson," and that Principal Hall warned other teachers to stay away from Plaintiff based on the allegations against him. Finally, Plaintiff contends that at some point when he had an exchange student living at his home, the Principal of the Rockingham County High School, Mr. Barnett, called the national headquarters of the exchange student organization "to make sure that they knew that this was an interracial household."[2]

In addition to the termination decision, Plaintiff contends that Defendant has provided negative employment references, and that when Plaintiff took a position at a tour bus company, Defendant told the company Plaintiff could not drive on any trips for Rockingham County Schools, given the circumstances and this ongoing litigation. As damages, Plaintiff purportedly seeks reinstatement to his position and $28.8 million in damages. The Board now seeks dismissal of all of Plaintiff's claims.

---

[2] Defendant disputes this and contends that the call was related only to conveying complaints about Plaintiff that the exchange student had raised to her teachers at the High School.

7

II.      DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

      1.      Summary Judgment Standard

Federal Rule of Civil Procedure 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). The Court is not "'required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury in finding a verdict in favor of that party.'" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986) (quoting Improvement Co. v. Munson, 81 U.S. (14 Wall.) 442, 448, 20 L. Ed. 867, 872 (1872)).

In considering a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party, in this case, Plaintiff, and accord that party the

benefit of all reasonable inferences. Bailey v. Blue Cross & Blue Shield, 67 F.3d 53, 56 (4th Cir. 1995). Moreover, the Court should not grant a motion for summary judgment "'unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances.'" Campbell v. Hewitt, Coleman & Assocs., 21 F.3d 52, 55 (4th Cir. 1994) (quoting Phoenix Sav. & Loan, Inc. v. Aetna Casualty & Surety Co., 381 F.2d 245, 249 (4th Cir. 1967)). Nevertheless, a mere scintilla of evidence is insufficient to withstand a motion for summary judgment. Anderson, 477 U.S. at 252, 106 S. Ct. at 2512. There must be evidence "on which the jury could reasonably find for the plaintiff." Id. The Court will therefore apply this standard in evaluating Plaintiff's claims in the present action, which are brought pursuant to Title VII of the Civil Rights Act of 1964 as amended by the Civil Rights Act of 1991.

2. Title VII Standard

Title VII provides that it is "an unlawful employment practice for an employer . . . to discharge . . . or otherwise discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). In a case alleging race discrimination in violation of Title VII, the plaintiff bears the burden of presenting sufficient evidence from which the jury could conclude that racial discrimination motivated the challenged adverse employment action. A plaintiff in a Title VII suit may proceed on a "pretext theory," by establishing that the reason given by the employer for the adverse action is just a pretext for discrimination using the McDonnell Douglas burden-

shifting scheme, or the plaintiff may proceed on a "mixed-motive theory," by demonstrating through direct or circumstantial evidence that even if the reason given by the employer is true, the adverse action was also motivated by racial discrimination. See Hill v. Lockheed Martin Logistics Mgmt, Inc., 354 F.3d 277, 284-86 (4th Cir. 2004) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 807, 93 S. Ct. 1817, 1826-27, 36 L. Ed. 2d 668 (1973) and Desert Palace, Inc. v. Costa, 539 U.S. 90, 98-99, 123 S. Ct. 2148, 2153, 156 L. Ed. 2d 84 (2003)); see also Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 317-19 (4th Cir. 2005) (continuing to recognize use of both theories in evaluating Title VII claims).

When the McDonnell Douglas burden-shifting scheme is used, the plaintiff bears the initial burden to show that (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) he was performing his job duties at a level that met his employer's legitimate expectations at the time of the adverse employment action; and (4) the position remains open or was filled by similarly qualified applicants outside the protected class. Hill v. Lockheed, 354 F.3d at 285. If plaintiff establishes this prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. Hill v. Lockheed, 354 F.3d at 285. If the employer does so, "the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's stated reasons 'were not its true reasons, but were a pretext for discrimination'" and this "burden to demonstrate pretext 'merges with the ultimate burden of persuading the court that the plaintiff has been the victim of intentional discrimination.'" Hill v. Lockheed, 354 F.3d at 285 (quoting Reeves v.

10

Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143, 120 S. Ct. 2097, 2106, 147 L. Ed. 2d 105 (2000) and Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 256, 101 S. Ct. 1089, 1095, 67 L. Ed. 2d 207 (1981)).

Moreover, "[r]egardless of the type of evidence offered by a plaintiff as support for her discrimination claim (direct, circumstantial, or evidence of pretext), or whether she proceeds under a mixed-motive or single-motive theory, 'the ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination.'" Hill v. Lockheed, 354 F.3d at 286 (quoting Reeves, 530 U.S. at 153, 120 S. Ct. at 2111). Thus, the plaintiff bringing a Title VII race discrimination claim bears the ultimate burden of presenting sufficient evidence upon which the jury could find that race "actually motivated the employer's decision." Hill v. Lockheed, 354 F.3d at 286 (quoting Reeves, 530 U.S. at 141, 120 S. Ct. at 2105).

3.  Application in the Present Case

Applying these standards in the present case, the Court notes that it is unclear whether Plaintiff is attempting to proceed under a "pretext theory" or a "mixed motive theory," but regardless of the framework used, it is clear that Plaintiff has failed to present any evidence from which the jury could find that his termination was motivated by racial discrimination. Cf. Hill v. Lockheed, 354 F.3d at 286 (noting that "an individual alleging disparate treatment based upon a protected trait must produce sufficient evidence upon which one could find that the protected trait . . . actually motivated the employer's decision" (internal quotations omitted)). The

11

Defendant has presented extensive evidence to establish that Plaintiff gave gifts to students after being specifically directed not to do so, that those gifts included illegally copied CDs with overt sexual contents and references to drinking and drugs, that Plaintiff gave those CDs to middle school and high school students without permission from their parents or the School, that Plaintiff sent inappropriate notes, e-mails and instant messages to various middle school students, that Plaintiff gave a letter to a middle school student containing extensive profanity and inappropriate discussions, and that Plaintiff attempted to contact the student's mother at her workplace to convince her to retrieve the materials and subvert the School's investigation of the matter. Plaintiff does not deny these events, and even included as Exhibits to his Response Brief copies of the letter and other e-mails and messages, as well as the CD cover for the CD he admits he copied and distributed to students.

To the extent Plaintiff's claim is considered under a "pretext theory" using the McDonnell Douglas burden-shifting scheme, the Court concludes that even if Plaintiff could establish a prima facie case, the Board has presented a legitimate, non-discriminatory reason for the action taken based on the misconduct cited above and as outlined in Plaintiff's termination letter. Cf. Hill v. Lockheed, 354 F.3d at 285 (describing the burden-shifting scheme). Therefore, "the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's stated reasons were not its true reasons, but were a pretext for discrimination" and this "burden to demonstrate pretext merges with the ultimate burden of persuading the court that the plaintiff has been the victim of intentional discrimination." Hill v. Lockheed, 354 F.3d

12

at 285 (quoting Reeves, 530 U.S. at 143, 120 S. Ct. at 2106, and Burdine, 450 U.S. at 256, 101 S. Ct. at 1095). Plaintiff in this present case has failed to present any evidence that the reasons presented by the Board were not the true reasons for the termination decision or were a pretext for discrimination. In fact, Plaintiff has admitted that he engaged in the cited misconduct, and Plaintiff does not allege that other employees engaged in similar misconduct but were not terminated.[3]

Moreover, the alleged instances of racial discrimination raised by Plaintiff are not sufficient to meet Plaintiff's ultimate burden of establishing that the termination decision was the result of racial discrimination. See Reeves, 530 U.S. at 153, 120 S. Ct. at 2111 (noting that "[t]he ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination"). In this regard, Plaintiff contends that one of the teachers, Ms. Kropa, was less friendly to him after she learned that Plaintiff's wife was Caucasian. However, even if this were true, there is no indication that

---

[3] At the settlement conference in this case, Plaintiff for the first time attempted to assert a race discrimination claim based on alleged disparate treatment. Specifically, Plaintiff stated that he was the victim of race discrimination because other employees gave gifts to students but were not terminated as he was in this instance. However, Plaintiff has not presented any evidence to establish that other employees gave inappropriate gifts, including illegally-copied CDs with inappropriate content, after being warned not to do so, or that other employees sent similar profanity-laden letters or notes to students, as Defendant contends that Plaintiff did here. Moreover, Plaintiff does not contend that white employees were allowed to give gifts while black employees were not, and in fact, Plaintiff's contention is simply that other employees of all races were allowed to give gifts while he was prohibited from doing so. The Court therefore concludes that no "disparate treatment" claim has been properly raised prior to Plaintiff's assertions for the first time at the settlement conference in this case, nor would Plaintiff's contentions support a disparate treatment claim in any event.

13

Ms. Kropa was in any way involved in the termination decision or any of the events leading to Plaintiff's termination. The Fourth Circuit has held that "an aggrieved employee who rests a discrimination claim under Title VII . . . upon the discriminatory motivations of a subordinate employee must come forward with sufficient evidence that the subordinate employee possessed such authority as to be viewed as the one principally responsible for the decision or the actual decisionmaker for the employer." Hill v. Lockheed, 354 F.3d at 291 (also noting in citations that "'statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself [do not] suffice to satisfy the plaintiff's burden' of proving discrimination" (quoting Price Waterhouse v. Hopkins, 490 U.S. 228, 277, 109 S. Ct. 1775, 1804-05, 104 L. Ed. 2d 268 (1989) (O'Connor, J., concurring))). In the present case, although Ms. Kropa had previously complained to Principal Hall in 2002 regarding Plaintiff cleaning her room during her planning period and allowing students to help clean, Plaintiff was not disciplined in any way as a result of that complaint, and there is no evidence the complaint was in any way related to Plaintiff's termination two years later. Similarly, with regard to Plaintiff's contention that when he had an exchange student living at his home, the Principal of the Rockingham County High School, Mr. Barnett, called the national headquarters of the exchange student organization "to make sure that they knew that this was an interracial household," the Court notes that Plaintiff has not presented any evidence to establish that Mr. Barnett (who was the Principal of the High School, not the Middle School), was in any way responsible for the ultimate decision to terminate Plaintiff. There is dispute regarding the context of the call and the statements allegedly made to

14

the exchange student organization, but regardless of what was said, Mr. Barnett made the call as the principal of the High School where the exchange student was a student, and there is no evidence he was responsible for the investigation regarding Plaintiff's inappropriate letters and gifts to middle school students or for the ultimate decision to terminate Plaintiff, nor is there any evidence linking Mr. Barnett's phone call to Plaintiff's termination several years later.

With regard to Plaintiff's contention that his termination was motivated by race discrimination because the investigation and ultimate termination pertained only to his interactions with white female students, the Court notes that the parent who complained in May 2004 (and whose complaint sparked the investigation and ultimate termination) was the parent of a white female student to whom Plaintiff wrote the letter described above. There is no evidence that School officials were aware of any inappropriate actions by Plaintiff toward black students, or that Plaintiff even sent similar letters or messages to black students. The fact that the student to whom Plaintiff sent an inappropriate, profanity-laden letter happened to be white, or that the parent who complained happened to be white, does not support the conclusion that the decision to terminate him was based on race discrimination.

Finally, with respect to Plaintiff's contention that Middle School Principal Hall once referred to Plaintiff as "a broke Michael Jackson," the Court finds that this isolated, ambiguous statement is not a sufficient basis on which the jury could find that the decision to terminate Plaintiff was motivated by race discrimination based on the evidence presented. Cf. Brinkley v. Harbour Recreation Club, 180 F.3d 598, 608 (4th Cir. 1999) (noting that "to prove

15

discriminatory animus, the derogatory remark cannot be stray or isolated" and must be "related to the employment decision in question."). Similarly, the contention that Principal Hall warned other teachers to stay away from Plaintiff based on the allegations against him does not demonstrate race discrimination. Therefore, the Court concludes that Plaintiff has failed to meet his ultimate burden of presenting sufficient evidence to create a genuine issue of material fact as to whether the Board's reasons for his termination "were not its true reasons, but were a pretext for discrimination." Hill v. Lockheed, 354 F.3d at 285 (quoting Reeves, 530 U.S. at 143, 120 S. Ct. at 2106).

Likewise, to the extent Plaintiff may be contending that his termination was motivated by racial discrimination under a "mixed-motive" theory, Plaintiff still bears the ultimate burden of presenting sufficient evidence upon which the jury could find that race "actually played a role in the employer's decisionmaking process and had a determinative influence on the outcome." Hill v. Lockheed, 354 F.3d at 286. Regardless of the type of evidence or theory used, "an individual alleging disparate treatment based upon a protected trait must produce sufficient evidence upon which one could find that 'the protected trait . . . actually motivated the employer's decision.'" Hill v. Lockheed, 354 F.3d at 286 (quoting Reeves, 530 U.S. at 141, 120 S. Ct. at 2105). As discussed above, Plaintiff has failed to present sufficient evidence from which the jury could find that his termination was motivated in any way by race discrimination, either alone or in conjunction with any other motive. Therefore, Plaintiff cannot proceed under either a "pretext" theory or a "mixed-motive" theory, and Plaintiff's claims for race discrimination in

16

violation of Title VII will be dismissed.

Finally, to the extent Plaintiff contends that Defendant gave him negative employment references, Plaintiff has failed to present any evidence to establish that information provided by the Defendant was false or was in any way motivated by race discrimination. Likewise, with regard to Plaintiff's contention that Defendant refused to allow him to drive student groups in his subsequent position with a local tour bus company, Plaintiff has not shown that this direction was in any way motivated by race discrimination, and Plaintiff has not stated any actual claim in this regard. Therefore, the Court concludes that Defendant's Motion for Summary Judgment should be granted, and all of Plaintiff's claims will be dismissed.

III. CONCLUSION

For all of the reasons discussed above, the Court concludes that Plaintiff has failed to present evidence to establish any genuine issue of material fact and has failed to present evidence on which a jury could return a verdict in his favor. The Motion for Summary Judgment [Document #50] filed by Defendant Rockingham County Board of Education will therefore be granted and Plaintiff's claims against the Board will be dismissed with prejudice. In addition, Plaintiff's purported claims against the North Carolina State Board of Education will be dismissed without prejudice for failure to obtain service of process.

An Order and Judgment consistent with this Memorandum Opinion will be filed contemporaneously herewith.

This, the 20th day of December, 2007.

_____
United States District Court Judge